UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE YVETTE BROWN,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No.18-cv-03703-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 21 |

Plaintiff Michelle Yvette Brown seeks social security benefits for a combination of mental and physical impairments, including: posttraumatic stress disorder, depression, anger problems, psychotic disorder not otherwise specified, knee problems, anxiety disorder, bipolar disorder, insomnia, dyslexia, and hypoglycemia (Administrative Record ("AR") 268, 315, 949.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 18, 21.) Because the Administrative Law Judge's ("ALJ") weighing of the medical evidence and adverse credibility finding are not supported by substantial evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for an award of benefits.

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9 & 11.)

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.*

## PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act") on September 22, 2014 alleging a disability onset date of April 1,

2013. (AR 15, 180.) Her application was denied both initially and upon reconsideration. (AR 15.) Plaintiff then submitted a written request for a hearing before an ALJ and the hearing was held on August 7, 2017. (*Id.*) On November 28, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-26.) Plaintiff filed a request for review of the ALJ's decision which was denied on March 21, 2017 making the ALJ's decision the Commissioner's final decision. (AR 7-9.) Plaintiff commenced this action for judicial review of the Commissioner's decision on June 21, 2018, pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE RECORD**

The ALJ found Plaintiff not disabled under section 1614(a)(3)(A) of the Act taking into consideration the testimony and other evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 15-26.)

At Step One, the ALJ found that Plaintiff engaged in substantial gainful activity from April 2015 through June 2015, but that since that period there has not been a continuous 12-month period during which she engaged in substantial gainful activity. (AR 17-18.)

At Step Two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, posttraumatic stress disorder, bipolar disorder, anxiety disorder not otherwise specified, dissociative identity disorder, borderline personality disorder, cannabis abuse in reported remission, psychotic disorder not otherwise specified, and hypoglycemia described as causing fainting spells versus a seizure-like disorder. (AR 18.)

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926). (*Id.*) For Plaintiff's mental impairments, the ALJ considered listings 12.03, 12.04, 12.06, 12.08, and 12.15. (AR 19.) The ALJ found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation such that the Paragraph B criteria were not satisfied. (*Id.*)

The ALJ next considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform medium work with the following limitations: cannot climb ladders, ropes, or scaffolds due to seizures like symptoms, avoid concentrated use of

3

hazardous machinery and exposure to unprotected heights, work must be limited to simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks, she needs to work in a low stress job defined as having only occasional decision making and only occasional changes in the work setting, no interaction with the general public and only occasional interaction with coworkers. (AR 20.)

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements and those of her mother, Kimberly Duncan, concerning the intensity, persistence and limiting effects of these symptoms are assigned little weight because they are not entirely consistent with the medical evidence outline above and other evidence in the record." (AR 22.) The ALJ gave significant weight to the physical and mental assessments of the State Agency consultants as well as to an intake evaluation performed by Alameda County Behavioral Health Care Services finding these assessments and the evaluation "consistent with the evidence as a whole." (AR 23.) The ALJ assigned little weight to a temporary disability form completed by Joseph Marquis, the opinion of Rick Ramirez a licensed clinical social worker, the medical statement completed by Mr. Ramirez and Plaintiff's treating physician Dr. Trotta, and a letter written by Plaintiff's treating psychiatrist Dr. Liles. (AR 23-24.)

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work as a home attendant based on the vocational expert's testimony. (AR 24.)

At Step Five, the ALJ concluded that Plaintiff was not disabled because she could perform other work in significant numbers in the national economy, citing packer, box assembler, and machine feeder as representative occupations that Plaintiff could perform. (AR 25.) The ALJ based this determination on the testimony of the vocational expert and Plaintiff's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. (*Id.*)

**DISCUSSION**

Plaintiff raises three primary issues with the ALJ's decision. First, Plaintiff insists that the ALJ erred in weighing the medical evidence, and in particular, failed to provide specific and

4

legitimate reasons for assigning little weight to the opinions of Plaintiff's treating physicians. Second, Plaintiff contends that the ALJ's adverse credibility finding is not supported by substantial evidence. Third, Plaintiff maintains that the ALJ erred in finding that Plaintiff did not meet or equal listings 12.04, 12.06, and 12.15.

### A. The ALJ's Weighing of the Medical Evidence

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830-31.

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In weighing medical opinions, the ALJ may consider (1) the examining relationship, (2) the treatment relationship, (3) the supportability, (4) the consistency, (5) the specialization, and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(5). In conducting this review the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Plaintiff contends that the ALJ committed multiple errors with respect to her weighing of the medical evidence. In particular, Plaintiff contends that the ALJ erred in giving little weight to the medical source statement from her treating therapist Rick Ramirez and physician Dr. Trotta, and the letter written by her treating psychiatrist, Dr. Liles. Plaintiff also insists that the ALJ erred in giving the most weight to the opinions of non-examining medical consultants Drs. Moura and Ferrell.

### 1. Treating Physician Dr. Trotta and Therapist Ramirez

The ALJ gave little weight to a medical source statement completed by Dr. Trotta and Therapist Ramirez of the Native American Health Center (hereafter referred to as "Dr. Trotta's statement) finding that Plaintiff had mild restriction in the activities of daily living, marked difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence or pace, and four or more episodes of decomposition within 12-month period, each of at least 2 weeks duration." (AR 590.) The ALJ discounted this opinion "because the opinion is overly restrictive in light of the claimant's minimal ongoing mental health treatment, activities of daily living, and these medical care providers made no mention of the claimant's substance use." (AR 24, 590.) The ALJ's decision is not supported by substantial evidence.

First, the ALJ's statement that Plaintiff has "minimal ongoing mental health treatment" is not supported by the record. In his medical source opinion, Dr. Trotta stated that he had been providing Plaintiff treatment 1-2 times per month for two years. (AR 590.) The medical record reflects numerous treatment notes from the Native American Health Center over this two-year period. (AR 659-839.) Within these records there are repeated references to Plaintiff's mental health issues: "member says she has been feeling depressed every day...was cutting on her arm a few weeks ago" (AR 155 (9/5/14 treatment note)); "member described panic attacks she experiences on an irregular basis; most recently 2 days ago" (AR 799 (9/22/14 treatment note)); "member described 'breakdowns' that she continues to have 2-3x/week" (AR 739 (4/28/15 treatment note)); "member has been depressed and has stopped eating" (AR 715 (9/4/15 treatment note: "member has been in and out of the hospital 'six times' due to suddenly fainting"); "feels depressed and was tearful numerous times during the visit" (AR 709 (9/15/15 treatment note));

"indicated suicidal ideation" (AR 706 (10/29/15 treatment note)); "frequent black-outs since June" (AR 702 (11/3/15 treatment note)); "suicidal ideation" (AR 689 (1/25/16 treatment note: "member thought about turning on the heater in her apartment to asphyxiate herself"); "member expressed suicidal ideation to medical staff after being informed she could not be seen for pelvic exam" (AR 682 (2/2/16 treatment note)); "[o]ver the last eight to 12 months, member has increasingly been showing traits of Borderline Personality Disorder" (AR 663 (3/10/16 treatment note)).

While these records do reflect several no-show appointments, Dr. Trotta specifically stated that Plaintiff has "extreme difficulty remembering her therapy appointments, she cannot seem to organize herself to get to various providers for her scheduled appts. Significant memory lapses on a <u>daily</u> basis, for up to 2-3 hours per incident." (AR 591 (emphasis in original).) The ALJ failed to consider Dr. Trotta's explanation for any gaps in Plaintiff's treatment. Further, notwithstanding Dr. Trotta's explanation, intermittent mental health treatment is not a legitimate basis for rejecting Dr. Trotta's statement regarding Plaintiff's limitations. *See Garrison*, 759 F.3d at 1017 ("[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health issues], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (ALJ erred in rejecting the opinions of treating physicians based on treatment notes showing "some improved mood and energy level;" the treatment notes must read in the "'context of the overall diagnostic picture'" and "consistently reflect[ed] that [the plaintiff] continued to experience severe symptoms, including ongoing depression and auditory hallucinations, difficulty sleeping, nightmares, and memory loss"). Accordingly, the ALJ's finding that Plaintiff has had "minimal ongoing mental health treatment" is not a specific or legitimate reason for rejecting Dr. Trotta's opinion.

Second, the ALJ's statement that Plaintiff's activities of daily living undermine Dr. Trotta's opinion is likewise not supported by substantial evidence. As an initial matter, the ALJ relies on Plaintiff's adult function report which was completed a year and a half before Dr. Trotta's report and predates much of the treatment records that Dr. Trotta relied upon in reaching

his opinion. *Compare* AR 319 (Plaintiff's 12/5/14 Adult Function Report) *with* AR 590 (Dr. Trotta's 6/26/16 medical source statement).[2] Further, Plaintiff's reported activities of daily living are not inconsistent with Dr. Trotta's finding which stated that Plaintiff had only mild restriction in the activities of daily living. (AR 590.) The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). That Plaintiff drives her car, uses public transportation, goes shopping in stores, and prepares her own (microwave) meals does not mean she does not suffer from severe mental health issues.[3] *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

Third and finally, the ALJ rejected Dr. Trotta's opinion because it "made no mention of the claimant's substance use." (AR 24.) However, the report actually *does* include a reference to substance abuse as Dr. Trotta concluded that neither "alcohol or substance abuse contribute to any of [Plaintiff's] limitations." (AR 592.) Further, it is unclear why Plaintiff's substance

---

[2] Plaintiff also completed an Adult Function Report on June 15, 2015. (AR 347-355.) The ALJ does not mention this report—which was completed six months after the one on which the ALJ relies heavily—except to reject Plaintiff's self-reported difficulty paying attention over five minutes because "she was able to ask questions during the entirety of her hearing that lasted almost 30 minutes without any noted problem concentrating." (AR 22.) The ALJ notably fails to mention that in the six months between reports, Plaintiff's self-reported activities of daily living declined. For example, in December she reported that she "do[es]n't care how she looks" while in June she stated that she "won't get dressed for days at a time." (*Compare* AR 320 *with* AR 348.) Likewise, in December for "feeds self" she wrote "microwave," but in June she stated she "go[es] without eating for days." (*Compare* AR 320 *with* AR 348.) Further, in December she needed help/reminders to wash her back and body, but six months later she needed help/reminders "to eat, put clothes on and [unintelligible] clothes." (*Compare* AR 321 *with* AR 349.) For shopping, in response how often she shops and how long it takes, in December she wrote "not often, it can take a few minutes," but six months later stated "with my severe anxiety I shop only once or twice a month." (*Compare* AR 322 *with* AR 350.)

[3] The ALJ also listed "live on her own" as an activity of daily living, but the cited pages either state that she lives in an apartment with friends (Exhibit 7E at 1 (AR 310)) or contain no reference to her living situation (Exhibit 12E (AR 339)). Further, as of June 2015, Plaintiff reported that she was "homeless" and living with "different people." (AR 347.)

8

1   would be material to Dr. Trotta's opinion as the ALJ herself concluded that even though Plaintiff's
2   "cannabis abuse in reported remission [is] severe, it is not a condition material to the
3   determination of this case because the evidence does not establish that the claimant's co-occurring
4   disorders would improve to the point of non-disability in the absence of drug and/or alcohol
5   abuse." (AR 22.)  Thus, the ALJ's statement regarding Dr. Trotta's failure to note Plaintiff's
6   substance abuse is neither an accurate (legitimate) or specific reason for rejecting his opinion.

Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician Dr. Trotta.

### 2. Treating Psychiatrist Dr. Liles

The ALJ gave little weight to the letter submitted by Plaintiff's treating psychiatrist Dr. Liles that she was under his care for a "totally disabling psychiatric condition" (AR 598) because the "statement is conclusory, without any explanation, and not consistent with the evidence as a whole." (AR 24.)  While the Commissioner is correct that the ALJ is the ultimate arbitrator of disability, *see* 20 C.F.R. § 416.927(e)(1), (2), the ALJ erred in rejecting Dr. Liles' opinion out of hand without providing an explanation (the very critique the ALJ made regarding Dr. Liles) and in ignoring the two years of treatment records from the Schuman-Liles Clinic which predated Dr. Liles's letter. (AR 595-650.)  These records consistently reflect that Plaintiff is depressed, has anxiety, and hears voices  (AR 616, 621, 622, 628, 632, 634, 638, 645, 650), has panic attacks (AR 647, 638), and has been diagnosed with: "Bipolar Disorder, Unspecified"; "Severe Major Depression, Recurrent Episode with Psychotic Behavior"; and "Posttraumatic Stress Disorder" (AR 609, 612, 615, 619, 627, 631, 637, 641-42).  Given the ALJ's failure to acknowledge this evidence, the ALJ's rejection of Dr. Liles's opinion as inconsistent with the evidence is not supported by substantial evidence.

### 3. Non-Examining Medical Consultants Drs. Moura and Ferrell

Next, Plaintiff challenges the ALJ's decision to give significant weight to the opinions of non-examining, non-treating medical consultants Drs. Moura and Ferrell.  Drs. Moura and Ferrell opined that Plaintiff had only moderate mental functioning limitations and could understand, remember and carry out simple 1-2 step tasks throughout a regular 40-hour workday and

9

workweek and could interact with supervisors and peers, but would do best in an environment with limited public contact. (AR 36-37, 52-54.) The ALJ accorded significant weight these opinions because they were "consistent with the evidence as a whole and are based on program expertise." (AR 23.) The ALJ's finding is not supported by substantial evidence.

"The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Likewise, "the report of [a] nontreating, nonexamining physician, combined with the ALJ's own observation of [the] claimant's demeanor at the hearing," is not substantial evidence sufficient to support the Commissioner's rejection of an examining physician's opinion that the claimant was disabled. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Rather, the ALJ must point to "specific evidence" to support a finding that a nontreating, nonexamining physician's opinion was entitled to greater weight than that of a treating or examining physician. *Morgan*, 169 F.3d at 602.

Here, the ALJ failed to point to any specific evidence and instead just found that Drs. Moura and Ferrell's opinions were "consistent with the evidence as a whole." (AR 23.) This conclusory statement is insufficient and it is particularly problematic where—as here—the bulk of the medical evidence postdated their opinions. Dr. Moura's opinion is dated January 23, 2015 (AR 37) and Dr. Ferrell's opinion is dated August 7, 2015 (AR 54), whereas Dr. Trotta's opinion is from June 20, 2016 (AR 592) and Dr. Liles's letter is dated May 17, 2016 (AR 598). Accordingly, the ALJ failed to provide specific and legitimate reasons based on substantial evidence for giving greater weight to non-examining, non-treating medical consultants Drs. Moura and Ferrell than Plaintiff's treating physicians.[4]

***

---

[4] It is unclear what the ALJ meant when she referred to Drs. Moura and Ferrell's "program expertise." The regulation which the Commissioner cites in support of this rationale does not have the cited subsections and does not refer to "program expertise." (Dkt. No. 21 at 7:13-14 (citing 20 C.F.R. § 416.927(e)(1), (2)). To the extent that the ALJ was referring to their specialization as psychologists/psychiatrists, their specialization is just one of the many factors which ALJs consider when weighing the medical evidence and does not trump factors such as the length, nature and extent of the treating relationship. *See* 20 C.F.R. § 416.927(c).

Based on the foregoing, the ALJ's weighing of the medical evidence is not supported by substantial evidence. Given this conclusion, the Court need not consider Plaintiff's additional argument regarding the ALJ's treatment of the Alameda County Behavioral Health Care Services Intake Form.

**B. The ALJ's Adverse Credibility Finding**

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (citations omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, the ALJ did not find that Plaintiff was malingering, but did find that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the type of alleged symptoms," that Plaintiff's testimony and that of her mother "concerning the intensity, persistence and limiting effects of these symptoms" was "not entirely consistent with the medical evidence outlined above and other evidence in the record." (AR 22.) As with the ALJ's basis for rejecting the opinion of Plaintiff's treating physicians as inconsistent with the "medical evidence as a whole," the same conclusory rationale fails to properly support the ALJ's adverse credibility finding. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (finding that the ALJ erred in using "boilerplate language" for the adverse credibility finding rather than offering "specific, clear, and convincing reasons."). The Court thus reviews the reasons the ALJ identified elsewhere in her opinion as reasons for rejecting Plaintiff's allegations.

First, the ALJ found that Plaintiff's failure to seek consistent mental health care "undermines the limiting effects of her mental conditions." (AR 21.) As discussed *supra*, this is

neither accurate nor a proper basis for rejecting Plaintiff's subjective reports of pain. The medical record contains multiple examples of Plaintiff seeking mental health treatment and any gaps in treatment were explained by Dr. Trotta as related to her underlying mental health issues. (AR 591 (noting that Plaintiff has "extreme difficult remembering her therapy appointments, she cannot seem to organize herself to get to various providers for her scheduled appts. Significant memory lapses on a daily basis, for up to 2-3 hours per incident.") (emphasis in original).) *See also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[a]ppellant may have failed to seek psychiatric treatment for [her] mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Second, the ALJ noted that a mental status examination contradicted Plaintiff's statement and that of her mother that she has difficulty paying attention beyond 5 minutes. (AR 21, 22.) For this, the ALJ cites to an October 14, 2014 treatment note which, under "Mental Status Exam," states that Plaintiff's attention was "within normal limits—good." (AR 619.) Again, the ALJ erred in cherry-picking one example among the dozens of treatment records to support her conclusion while ignoring the contradictory evidence, and in particular, the statement of her treating physician that she has significant memory lapses on a daily basis. *See Garrison*, 759 F.3d at 1017 ("[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health issues], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

Third, the ALJ rejected Plaintiff's report that she has hypoglycemia which causes frequent fainting spells and/or seizures as not supported by the record. (AR 22.) It is unclear what sort of record support would satisfy the ALJ. The record contains numerous references to Plaintiff's seizures and blackouts. (AR 603, 680, 695, 702, 707, 712.) In addition, her September 2, 2015 treatment note state that "she has been in and out of the hospital 'six times' due to suddenly fainting." (AR 714; *see also* 563 (8/5/15 Paramedics Plus statement which indicates that Plaintiff "was found ambulating unsteadily on the sidewalk after bystanders called 911 for a woman lying

12

on the sidewalk).) Accordingly, the ALJ failed to offer clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony regarding her seizures.

Fourth, the ALJ found that Plaintiff's activities of daily living did not support her subjective reports of pain. The ALJ's findings regarding Plaintiff's activities of daily living are not supported by substantial evidence as discussed *supra*. The Court only addresses the ALJ's reliance on the fact that the record reflects that on September 4, 2014, Plaintiff "went to Las Vegas to have some fun." (AR 22 (citing Exhibit 15F/155 (AR 813)).) While the cited record does indicate that Plaintiff went to Las Vegas on this date, the very same page also states that "she has been feeling depressed every day" and that she "was cutting on her arm a few weeks ago, left scars on forearm." (AR 813.) Thus, the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective reports of pain based on Plaintiff's activities of daily living.[5]

Fifth, the ALJ found that there was "evidence in the record that the claimant stopped working for reasons not related to her allegedly disabling impairments." (AR 22.) In support of this finding, the ALJ notes that she stopped providing in-home supportive services because the older adult she was caring for put a stay away order on her because she did not want to marry him." (*Id*. (citing Exhibit 12F/3 (AR 585).) In fact, the full text of the cited page states that Plaintiff reported that when she declined the patient's sexual advances and offer of marriage "she claims he put glass in her food and feigned abuse so she would lose her employment." (AR 585.) The ALJ does not acknowledge this text which if true—given Plaintiff's documented history of PTSD as a result of sexual and physical abuse—could explain her inability to return to that position, or if not true, would be consistent with the treatment notes which reflect Plaintiff's history of hallucinations. Nor does the ALJ acknowledge Plaintiff's testimony that her medical

---

[5] The Commissioner also argues that Plaintiff's past work as a caregiver and housecleaner support the ALJs adverse credibility finding (Dkt. No. 21 at 9); however, the ALJ did not cite past work as an activity of daily living supporting the credibility determination and thus will not be considered. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). "We are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). It is worth noting, however, that the ALJ's finding cited by the Commissioner was merely that Plaintiff engaged in substantial gainful activity for a three-month period in 2015.

1    provider told her to stop working. (AR 959-960.) Accordingly, the ALJ's finding regarding the
2    reasons Plaintiff stopped work is not supported by substantial evidence.
3            Finally, the ALJ discounted Plaintiff's credibility because she "was able to ask questions
4    during the entirety of her hearing." (AR 22.) This statement does not make sense as Plaintiff—
5    who was represented by counsel—did not ask any questions during her hearing. (AR 944-693.)
6    The Commissioner suggests that this was an inadvertent oversight on the part of the ALJ who
7    meant answer not ask. (Dkt. No. 21 at 10 n.6.) Even if so, "the ALJ failed to specify how
8    plaintiff's ability to [answer questions during a 30-minute hearing] would translate into an ability
9    to perform gainful employment." *See White v. Colvin*, No. 13-1626-PLA, 2014 WL 4187823, at
10   *7 (C.D. Cal. Aug. 21, 2014). Further, Plaintiff appeared at the hearing by telephone, so it is not
11   as though the ALJ personally observed how she answered the questions.
12           In sum, the ALJ's adverse credibility finding does not satisfy the "demanding" "clear and
13   convincing standard." *Garrison*, 759 F.3d at 1013.

                                                    ***

15           Because the ALJ's consideration of the medical evidence and adverse credibility finding
16   are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court
17   need not consider Plaintiff's additional argument that the ALJ erred at Step Three when she failed
18   to find that Plaintiff's impairments did not meet or equal listings 12.04, 12.06, or 12.15. The
19   ALJ's errors here go to the heart of the disability determination and are not harmless. *See
20   Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is
21   harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path
22   may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.")
23   (internal quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d
24   1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can
25   confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have
26   reached a different disability determination.").

### C. Remand

28           Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule.

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, id., and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12-cv-6179-YGR, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler*, 775 F.3d at 1105). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

Such rare circumstances exist here. As to the first prong, the record is fully developed. It spans nearly a thousand pages and contains treatment notes from dozens of doctor visits during the insured period as well as medical history dating back as far as 2005. Although the ALJ insisted Plaintiff did not undergo significant treatment during the relevant period, the record reflects Plaintiff's ongoing mental health problems and attempts to obtain treatment. The record also reflects Plaintiff's testimony before the ALJ and her responses to questionnaires about her physical and mental limitations, and includes the lay statement of her mother—all of which corroborate the disabling nature of Plaintiff's impairments. In addition, the VE testified that someone who would be off-task or unable to maintain attention and concentration for 10-15 percent of an eight-hour day, as determined by treating physician Dr. Trotta, would be unemployable. *Compare* AR 591 (Dr. Trotta's finding that Plaintiff had "extreme" impairment in

15

her ability to "maintain concentration, attention and persistence and complete a normal workday and workweek without interruptions from psychologically based symptoms") *with* AR 962-63 (VE testimony).

The second and third prongs of the credit-as-true standard are also satisfied. The ALJ failed to provide legally sufficient reasons for rejecting the informed medical opinion of Plaintiff's treating physician Dr. Trotta as well as the statement of her treating psychologist Dr. Liles, and instead, improperly gave great weight to the older opinions of the state Agency nontreating, nonexamining medical consultants. When credited as true, Dr. Trotta's opinion establishes that Plaintiff is disabled, because the VE testified that somebody with her limitations regarding attention and concentration would be unemployable. (AR 962-63.) In addition, Dr. Trotta's opinion, if credited as true, directly contradicts the ALJ's findings regarding whether Plaintiff's impairments satisfy the Paragraph B criteria for listings 12.04, 12.06 and 12.15. (AR 19-20.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (Mental Disorders); *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013)("When a claimant meets or equals a listing, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work."). Thus, the improperly rejected evidence establishes that Plaintiff is entitled to benefits. *See Garrison*, 759 F.3d at 1022; *Lingenfelter*, 504 F.3d at 1041 n.12 (9th Cir. 2007); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) (applying credit-as-true where: (1) ALJ failed to provide legally sufficient reasons to discredit treating doctor's opinion; (2) treating opinion was supported by evidence; (3) VE testified that an individual of similar status and impairment was unable to work full-time; and (4) plaintiff's testimony was not inconsistent with the record).

The Commissioner insists that remand for an award of benefits is improper because the record contains "conflicting evidence" regarding Plaintiff's alleged disability—pointing to "conflicts in the medical opinion evidence and issues surrounding Plaintiff's subjective allegations." (Dkt. No. 21: at 12:8-10.) However, as discussed *supra*, neither of these arguments is supported by the record. "[T]he credit-as-true rule foreclose[s] the argument that a remand for

16

the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a useful purpose under the first part of credit-as-true analysis." *See Garrison*, 759 F.3d at 1021 (citing *Benecke*, 379 F.3d at 595) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") In sum, there is no serious doubt based on the Court's evaluation of the record as a whole that Plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED and Defendant's cross-motion is DENIED. The Court VACATES the ALJ's final decision and REMANDS for an award of benefits.

This Order disposes of Docket Nos. 18 and 22.

**IT IS SO ORDERED.**

Dated: May 24, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge